This document was signed electronically on August 27, 2018, which may be different from its entry on the record.

IT IS SO ORDERED.

Dated: August 27, 2018



ALAN M. KOSCHIK
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| In re | ) | |
| | ) | Case No. 15-51114 |
| CAROLYN SLEDGE, | ) | |
| | ) | Chapter 13 |
| Debtor. | ) | |
| | ) | Judge Alan M. Koschik |
| | ) | |

MEMORANDUM DECISION ON TRUSTEE'S
MOTION TO MODIFY PLAN AND DEBTOR'S OBJECTION

On September 19, 2016, trustee Keith Rucinski (the "Trustee") filed a Motion to Modify Plan and Increase Percent (Docket No. 35) (the "Motion") to modify the confirmed chapter 13 plan (Docket No. 12) (the "Plan") of debtor Carolyn Sledge (the "Debtor"). For the reasons set forth in this Memorandum Decision, the Trustee's Motion will be granted.

FACTUAL AND PROCEDURAL BACKGROUND

The facts are largely undisputed. The Debtor filed her petition on May 6, 2015 (Docket No. 1) and simultaneously filed her original Chapter 13 Plan (Docket No. 2). The Debtor filed

her Amended Plan (Docket No. 12 Ex. 1) on July 8, 2015 (the "Plan"), and the Court entered an order confirming the Plan (Docket No. 16) on July 31, 2015 (the "Confirmation Order").

Under Article 9 of the Plan, the Debtor proposed "Unsecured Creditors shall be $83,963.43 or 25% of timely filed and non-disputed general non-priority unsecured claims."[1] (Plan at 3-4.) Article 1 of the Plan calls for a monthly payment of $373.00,[2] plus the Debtor's commitment "to devote all annual income tax refunds greater than $1,500," excluding certain exempt tax credits. *Id*. at 8. In Article 12, the Plan provides: "The applicable commitment period is 60 months as the Debtor is 'over-median.'" *Id.* at 4. Article 12 of the Plan also provides that, in addition to the scheduled monthly plan payments, the Debtor will pay the Trustee half of her annual bonuses "for the life of the plan." *Id.* That provision contemplates that extra payments anticipated from the Debtor in excess of her monthly payment would necessitate an adjustment of the percentage dividend due to the unsecured creditors. "It shall be the duty of the Chapter 13 Trustee to file any necessary pleadings pursuant to 11 U.S.C. § 1329 if the amount of bonus allocated into the Chapter 13 plan changes or otherwise modifies the dividend paid to the general unsecured creditors." *Id.*

Moreover, the Confirmation Order provides that the Debtor is obligated "to devote all future disposable income to the Plan." (Confirmation Order, second paragraph 1, at 2.) The Confirmation Order controls over the Plan to the extent there are any inconsistencies between them. (Confirmation Order, first paragraph 2, at 1.)

When the claims bar date passed, the total pool of general unsecured creditors was limited to $14,042.22. The parties agree that this figure was significantly less than anticipated

---

[1] See discussion in Section II.A. of this Memorandum Decision regarding the Court's interpretation of this provision of the Plan.

[2] The $373 per month figure is payable in the amount of $172.50 every two weeks. Twenty-six (26) annual payments of this amount, divided by the 12 months in a year, work out to an average monthly payment of $373.75.

2

because PNC Bank failed to file a timely proof of claim.  The Debtor had scheduled PNC Bank's unsecured deficiency claim in the amount of $66,906.00.  Because the claims were much less than anticipated by the Debtor and her Plan, on September 19, 2016, the Trustee filed the Motion seeking to increase the unsecured dividend from 25 percent to 100 percent.  (Docket No. 35.)  The Debtor's Plan payments of $373.00 per month were not affected by the Motion.  *Id.*

On September 22, 2016, Debtor filed a response to the motion (Docket No. 36) (the "Response").  The Debtor argued that the Motion should be denied because it was too late for the Trustee to move to modify the confirmed Plan, asserting that the Trustee had already made the final disbursement due under the Plan as of the date of the Motion.  (Response at 2.)  The Debtor also argued that the requirements that a debtor must devote her full disposable income for the duration of her applicable commitment period was exclusively a confirmation issue and was not relevant to a motion to modify a plan pursuant to 11 U.S.C. § 1329.  (Response at 2-6.)

The Court held a hearing (the "Hearing") on the Motion on December 1, 2016, and entered a scheduling order allowing for further briefing.  (Docket No. 39.)  The Trustee and the Debtor filed their supporting briefs on January 11, 2017, and February 14, 2017, respectively.  (Docket Nos. 41 and 42.)

As of the date of the Trustee's Motion, the Debtor was in the eighteenth month of her Chapter 13 plan.  (Trustee's Br., Docket No. 41, at 2.)  There are currently no secured or priority claims to be paid though the Plan.  *Id.*

At the conclusion of the supplemental briefing, the Court took this matter under advisement.

3

## LEGAL ANALYSIS

### I. THE TRUSTEE'S MOTION TO MODIFY IS TIMELY.

The first issue in this case is whether the Trustee's Motion is timely under Section 1329(a) of the Bankruptcy Code. Section 1329 provides, in relevant part, "[a]t any time after confirmation of the plan **but before the completion of payments under such plan**, the plan may be modified, upon request of . . . the trustee. . . ." 11 U.S.C. 1329(a) (emphasis added). The Trustee argues that the Motion is timely because the Plan states that the applicable commitment period is 60 months, the applicable commitment period is a minimum temporal requirement, and therefore the Plan had not been completed after only eighteen months. The Debtor argues that the Trustee's Motion is untimely under Section 1329(a), asserting that the "payments under [the] Plan" were completed on July 29, 2016, when the last disbursement was made by the Trustee to the non-priority general unsecured creditors, and that the July 29, 2016 'payment' satisfied the 25 percent dividend provided for in Article 9 of the Plan. (Response at 2.)

The Debtor assumes that Section 1329(a)'s phrase "completion of payments" refers to the Chapter 13 trustee's distributions to creditors under a plan. The Court disagrees. The "completion of payments" refers to the debtor completing the payments she owes to the Chapter 13 trustee. 8 Richard Levin and Henry J. Sommer, Collier on Bankruptcy ¶ 1329.01 at 1329-3 (16th ed. 2016) ("Under section 1329(a), at any time after confirmation and before *the debtor completes* plan payments, [a party-in-interest] may request that the plan be modified.") (emphasis added).

The Sixth Circuit established that the applicable commitment period is a minimum temporal requirement for confirmation of Chapter 13 plans in *Baud v. Carroll*, 634 F.3d 327, 338 (6th Cir. 2011). The court held that "§ 1325(b) establishes the minimum time for the payment of projected disposable income." *Id.* at 340. Specifically, § 1325(b) provides, in relevant part,

4

> the "applicable commitment period" . . . shall be . . . not less than 5 years, if the current monthly income of the debtor and the debtor's spouse combined, when multiplied by 12, is not less than – in the case of a debtor in a household of 1 person, the median family income of the applicable State for 1 earner . . . .

11 U.S.C. § 1325(b)(4).

Since the Debtor has income above the median in Ohio, the required applicable commitment period for the Debtor's Plan is 60 months. The Plan provides for payments by the Debtor to the Trustee averaging $373.00 per month for 60 months in Articles 1 and 12, respectively. (Plan at 1 and 4.) As of the date the Motion was filed, the Debtor had only completed eighteen months of the 60-month Plan. (Trustee's Br. 2.) The Debtor contends that PNC Bank's failure to file an unsecured deficiency claim changed expectations sufficiently so as to justify a plan modification to reduce the number of payments -- an argument the Trustee hotly disputes. However, the Debtor has not filed a motion to modify the Plan in such a way. Whether the payments due under the Plan have been completed so as to render the Trustee's Motion untimely relates to the Plan as it is, not the Plan as the Debtor wishes it to be.

Therefore, the Debtor's Plan payments had not been completed at the time the Trustee filed the Motion. Section 1329(a) allows motions to modify the plan to be filed any time before the Debtor makes her last payment to the Trustee under her Plan. Since the Debtor's payments to the Trustee promised by her existing confirmed Plan had not yet been completed, the Trustee's Motion is timely.

## II. THE TRUSTEE'S MOTION IS WELL TAKEN AND SHALL BE GRANTED ON THE MERITS.

The Court now turns to the merits of the Trustee's Motion. The provisions of the Debtor's confirmed Plan, the conditions for confirmation imposed by the Confirmation Order entered in this case, and the applicable law in this Circuit and before this Court regarding the

5

necessary expectations of a confirmed Chapter 13 plan compel the conclusion that the Trustee's Motion is reasonable and should be granted.

> A. **The Plan's Terms Contemplate the Distinct Possibility of Increasing the Percentage Dividend Due to Unsecured Creditors, Implemented by a Motion to Modify Filed by the Trustee Pursuant to 11 U.S.C. § 1329.**

Provisions of the Debtor's confirmed Plan demonstrate that the modification sought by the Trustee in his Motion is reasonable. Notwithstanding the protests of the Debtor in her Response, examination of the Plan's terms reveals that the proposed modification would lead to a result closer to its original intent than would the outcome suggested by the Debtor in her Response and brief in support. Moreover, the Motion's proposal is a close cousin to the sort of modification the Plan expressly contemplates.

The Plan, as confirmed, proposes monthly payments of $373[3] over the course of a 60-month applicable commitment period. (Plan at 1 and 4.) These payments alone would total approximately $22,425. These facts provide context necessary to interpret the Plan's Article 9, which provides for the dividend to unsecured creditors.

Article 9 states "Unsecured Creditors shall be $83,963.45 or 25% of the timely filed and non-disputed general non-priority unsecured claims." (Plan at 3-4.) While grammatically lacking, at first blush this provision would appear to mean that $83,963.45 was the Debtor's estimate for the total of 25 percent distribution on account of her unsecured debts. However, a detailed review of the entire Plan reveals that the aggregate amount of the proposed monthly payments is slightly more than one-quarter of $83,963.45, suggesting that the latter figure was the Debtor's estimate of its unsecured claims at the time she filed her bankruptcy petition.

---

[3] *See* footnote 2, *supra.*

6

Indeed, the Debtor's Schedule F lists general unsecured claims totaling $83,963.43 and her Schedule E lists no priority claims. (Docket No. 1 at 14-19.)

In other words, the Debtor was proposing to pay 25 percent of $83,963.45, or approximately $20,990.86, on account of the claims filed by her unsecured creditors. Because this is less than the aggregate of the Debtor's proposed plan payments, and especially in light of the fact that the Plan contemplated no priority or secured claims to be paid as part of the Plan (except, presumably, for attorney's fees and trustee's fees), such a plan would likely be feasible. With these facts taken together, it is reasonable to interpret the Plan as promising approximately $21,000 to the Debtor's unsecured creditors, which the Debtor merely *estimated* would yield a 25 percent dividend on account of those creditors' claims, rather than capping or fixing the dividend at 25 percent, regardless how many claims were filed.

Moreover, the Plan's terms clearly contemplate additional payments by the Debtor and increased dividends to the unsecured creditors. For example, in Article 1 of the Plan, the Debtor "further proposes to devote all annual income tax refunds greater than $1,500 . . . to the repayment of creditors under this plan." (Plan at 1.) Perhaps these funds would be necessary to fund attorney's fees and trustee's fees, but there is no obvious prohibition on such additional funds being used to augment the distributions to the unsecured creditors.

Moreover, in a provision even more clearly on point, Article 12(D) of the Plan provides that the Debtor:

> "[s]hall allocate 50% of her annual bonus, when obtained, in to her Chapter 13, *for the life of the Chapter 13 Plan*. It shall be the duty of the Chapter 13 Trustee to file any necessary pleading pursuant to 11 U.S.C. § 1129 if the amount of bonus allocated into the Chapter 13 Plan changes or otherwise modifies the dividend paid to the general unsecured creditors."

(Plan at 4) (emphasis added). Here the Debtor contemplates additional funding, or at least the potential for additional funding, into the Plan, an increase of the percentage dividend to the

7

unsecured creditors, and the necessity and the authority for the Trustee to move to modify the Plan under Section 1329 to increase the dividend as a result of such bonuses. Moreover, this provision refers to "the life of the Chapter 13 Plan," emphasizing that the applicable commitment period of 60 months, provided for by Article 12(A) of the Plan, contemplated a temporal aspect to the Plan -- namely that the Plan would last for 60 months and that additional income earned by the Debtor during the course of that time would not short circuit the term of the Plan or the Debtor's obligation to make her monthly payments.

The Court does not view the particular circumstances necessitating the Trustee's proposed modification in his Motion as leading to a different result. There is no question that the Plan contemplated an increase of the percentage dividend if additional income was made available, certainly if from tax refunds and bonuses. In this specific instance, the unanticipated event was the failure of the largest unsecured creditor to file a timely proof of claim. The Plan, when properly examined in context, contemplates the distribution of approximately $21,000 to unsecured creditors. Nothing in the Plan expressly provides that the failure of a creditor to file a proof of claim would lead to a windfall for the Debtor instead of an increased dividend to the other unsecured creditors who timely filed allowed unsecured claims, up to but not exceeding a dividend of 100 percent. *See* 11 U.S.C. § 1325(b)(4)(B).

To the extent the Debtor's Plan was ambiguous on this point, the Court observes that the Debtor and her counsel drafted the Plan and that its ambiguities are construed against the drafter. *In re Alvarado,* Case No. 10-55181, Docket No. 103 at 8 (Bankr. N.D. Ohio, Oct. 16, 2015) (Koschik, J.). Indeed, if the Plan had been unambiguously written to provide a cap on the percentage distributions to filed and allowed unsecured claims, the Trustee would have been given a clear opportunity to object on the grounds that the Debtor was seeking a discharge without exercising her best efforts by devoting her full projected disposable income during the

applicable commitment period, an objection to confirmation that would almost have certainly been sustained. *Id.* at 9-11. Therefore, the Court views the Trustee's Motion as the Trustee's compliance with his duties under the Plan where additional income is available to pay claims and to clarify an administrative detail so that he has clear authority to perform the original purpose of the Plan.

**B. The Confirmation Order Incorporates the Confirmation Requirement That the Debtor Pay Her Full Disposable Income.**

The Debtor argues that Section 1325(b)'s confirmation requirement that the Debtor pay into the Plan all of her projected disposable income for the applicable commitment period does not apply to this Motion to modify because Section 1329 does not incorporate that code section. The Debtor cites for support the pre-BAPCPA case of *In re Sunahara*, 326 B.R. 768 (B.A.P. 9th Cir. 2005) (holding that a debtor could pay off his Chapter 13 plan early by refinancing his house and receive a discharge even though the lump sum would not pay 100 percent of all allowed unsecured claims).

The facts in *Sunahara* are distinguishable from those in this case. In *Sunahara*, the debtor voluntarily committed exempt assets to the plan in order to pay his plan obligations early. He did not seek to reduce or avoid those obligations based on a creditor's procedural default.

Moreover, the Confirmation Order *in this case* incorporates into the Debtor's obligations under the Plan the requirement that the Debtor "devote all future disposable income to the Plan." (Confirmation Order, second paragraph 1, at 2.) Therefore, although Section 1329 governs plan modification without expressly incorporating Section 1325(b) and its confirmation requirements, the Debtor is nevertheless obligated to devote all future disposable income during the applicable commitment period because the Confirmation Order imposes such an obligation. The Motion increases the Plan dividend to unsecured creditors in furtherance of this Plan

requirement that the Debtor devote her full disposable income to the Plan. Allowing the Debtor to enjoy a windfall, as suggested in her Response, would violate that provision of the Confirmation Order.

### C. *Baud*, *Ransom*, and *Alvarado* Hold That BAPCPA Expects Debtors To Pay Full Disposable Income in Their Plans.

One of the core purposes of BAPCPA is "ensuring that debtors devote their full disposable income to repaying creditors." *Ransom v. FIA Card Services., N.A.*, 562 U.S. 61, 78 (2011); *see also Baud*, 634 F.3d at 343 (6th Cir. 2011); *In re Alvarado*, No. 10-55181, Docket No. 103 at 10 (Bankr. N.D. Ohio, Oct. 16, 2015) (Koschik, J.). The Trustee's Motion is consistent with this purpose by seeking to revise the percentage dividend to reflect the actual amount the timely-filed, allowed general unsecured claims would receive after the Debtor pays into the Plan her full disposable income for the 60 month applicable commitment period. The Motion is also consistent with Chapter 13's purpose to maximize creditor recoveries. *See Baud*, 634 F.3d at 340.

The Debtor asserts that the 25 percent dividend in Article 9 of the Plan to general unsecured creditors is a cap imposed by the Plan, and since that level has already been reached, the Trustee cannot increase the dividend now. If this is what the Debtor intended to communicate through her Plan's provisions, that notice was not clear, especially considering that Article 12 of the Plan explicitly contemplates that the Trustee could increase the dividend when necessary through a motion to modify. (Plan at 4.) These two provisions, taken together, assuming the Debtor's interpretation of Article 9, would render the Plan ambiguous.

If the Debtor's Plan had contained a clear provision that the dividend would be capped at 25 percent of allowed general unsecured claims, or that the 25 percent dividend cap had precedent over (i) the stated applicable commitment period, (ii) the obligation to pay full

10

disposable income for 60 months, and (iii) the duty of the Trustee to modify the plan to increase the dividend, the Trustee would have had a clear opportunity to object to confirmation. If the Trustee had failed to object under those circumstances and such a plan were confirmed, the Debtor's current argument would be much stronger and such a plan would likely be enforceable, even though inconsistent with BAPCPA's intent that debtors pay their full disposable income into their plans during their applicable commitment period for the benefit of their creditors as a condition of receiving a discharge. *See generally United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260 (2010).

However, to the extent that the Plan is ambiguous regarding whether reaching the 25 percent dividend or the 60 month applicable commitment period marks the completion of the Plan, the Plan will be interpreted so as to be confirmable. If the Debtor had clearly stated in her proposed plan that the 25 percent dividend was a cap on distributions to general unsecured creditors, the Plan almost certainly would not have been confirmed over an objection from the Trustee or unsecured creditor. *See In re Alvarado*, Case No. 10-55181, Docket No. 103 at 6 (Bankr. N.D. Ohio, Oct. 16, 2015) (Koschik, J.). Since the Debtor's interpretation of the Plan would almost certainly not be confirmable, this Court will decline to adopt the Debtor's construction of her Plan, and instead adopt the Trustee's construction stated in his Motion that the 60 month applicable commitment period defines the duration of the Plan. (Docket No. 35 at 1.)

## **CONCLUSION**

The Court concludes that the Trustee's Motion is timely under Section 1329(a) because the Debtor has not completed the 60 monthly payments required by her confirmed Plan. The Trustee's Motion is reasonable under the circumstances of this case and will be granted to modify the dividend to allowed unsecured claims from 25 percent to 100 percent.

The Court will enter a separate order consistent with this Memorandum Decision. The Trustee's Motion to Modify the Plan (Docket No. 35) will not be deemed granted until the separate order has been docketed by the Clerk.

# # #